### GREEN et al. v. GRAVATT et al.
#### No. 3279.

District Court, W. D. Pennsylvania.
April 26, 1937.

Benj. C. Sigal, of Pittsburgh, Pa., and Lee Pressman, of New York City, for plaintiffs.

Charlton Ogborn and Arthur E. Reyman, both of Washington, D. C., and Leo I. Shapiro, of Pittsburgh, Pa., for defendants.

McVICAR, District Judge.

This case is now before us on plaintiffs' and defendants' applications for a preliminary injunction. After hearing and consideration thereof, the court makes the following findings of fact and conclusions of law:

### Findings of Fact.

1. The American Federation of Labor is a voluntary unincorporated association consisting of affiliated international and national trade unions, local and federal trade and labor unions, and state and central labor federations and bodies, with its principal office in the city of Washington in the District of Columbia.

2. The purpose of the American Federation of Labor and its members is set forth in the preamble, and article 2, sections 1 to 4, pages 1 to 4 of the Constitution, and is as follows:

"Preamble.

"Whereas, A struggle is going on in all the nations of the civilized world between the oppressors and the oppressed of all countries, a struggle between the capitalist and the laborer, which grows in intensity from year to year, and will work disastrous results to the toiling millions if they are not combined for mutual protection and benefit.

"It, therefore, behooves the representatives of the trade and labor unions of America, in Convention assembled, to adopt such measures and disseminate such principles among the mechanics and laborers of our country as will permanently unite them to secure the recognition of rights to which they are justly entitled.

"We, therefore, declare ourselves in favor of the formation of a thorough federation, embracing every trade and labor organization in America, organized under the trade union system."

"Article II.

"Section 1. The object of this Federation shall be the encouragement and formation of local Trade and Labor Unions, and the closer federation of such societies through the organization of Central Trade and Labor Unions in every city, and the further combination of such bodies into State, Territorial, or Provincial organizations to secure legislation in the interest of the working masses.

"Sec. 2. The establishment of National and International Trade Unions, based upon a strict recognition of the autonomy of each trade, and the promotion and advancement of such bodies.

"Sec. 3. The establishment of Departments composed of National or International Unions affiliated with the American Federation of Labor, of the same industry, and which Departments shall be governed in conformity with the laws of the American Federation of Labor.

"Sec. 4. An American Federation of all National and International Trade Unions, to aid and assist each other; to aid and encourage the sale of union label goods, and to secure legislation in the interest of the working people, and influence public opinion, by peaceful and legal methods, in favor of organized labor."

3. The number of members of the American Federation of Labor is so large that it would be impracticable to join them as parties in the bill of complaint.

4. William Green, plaintiff, is a citizen and resident of the State of Ohio. He sues as a representative of, and for the benefit of, all the members of the American Federation of Labor.

5. The Aluminum Workers' Union, Local No. 18356, the members and officers of which are represented by the named defendants, is an unincorporated association, having its only office and place of business in New Kensington, Westmoreland County, State of Pennsylvania, and exists by virtue of, and subject to, the terms of the certificate of affiliation issued to it on August 1, 1933, by the American Federation of Labor. Said union is a directly affiliated union of the American Federation of Labor.

6. The Aluminum Workers' Union, Local No. 18356, has a membership in excess of 1,800 persons, to join all of whom, as parties defendant, would be inconvenient, cumbersome, and impracticable.

7. The Aluminum Workers' Union, Local 18356, has a contract with the Aluminum Company of America, making it the collective bargaining agent for its members with the Aluminum Company of America.

8. The officers of the Aluminum Workers' Union, Local No. 18356, are W. B. Gravatt, president; John Haser, vice president; Mary M. Peli, financial secretary; Walter Pasnick, recording secretary; George Hobaugh, treasurer; Anthony Jasinski, guide; Edward Troutman, guardian; Nick Zonorich, Louis Petrigni, Thomas Davis, trustees. All of said officers and individuals are residents of Westmoreland County, State of Pennsylvania, are citizens thereof, and are sued as officers of the said union, individually and as representatives of, and on behalf of, all the members and officers of the said union.

9. The matter in controversy herein exceeds, exclusive of interests and costs, the value of $3,000.

10. The constitution of the American Federation of Labor sets forth the rights, privileges, and duties of all affiliated federal labor unions.

11. Section 6, page 5 of the Constitution of the Aluminum Workers' Union, No. 18356, provides that:

"Before entering upon the duties of their respective offices, the newly elected officers shall subscribe to the following affirmation:

"I, ......, do hereby pledge my honor to perform the duties of my office as required by the Constitution of this Union; to bear true and faithful allegiance to the American Federation of Labor; to deliver all books, papers and other property of the Union that may be in my possession at the end of my term to my successor in office, and at all times to so conduct myself as becomes a member of this Union."

12. The certificate of affiliation issued to the members and officers of the Aluminum Workers' Union, Local 18356, of the American Federation of Labor, includes the following proviso: "Provided that the said union do conform to the constitution, laws, rules and regulations of the American Federation of Labor, and in default thereof or any part, this Certificate of Affiliation may be suspended or revoked, according to the laws of this federation and should the said Aluminum Workers' Union, Local 18356 be dissolved, suspended or forfeit this Certificate of Affiliation, then the persons to whom this Certificate of Affiliation is granted or their successors, bind themselves to surrender the same with such other property as shall properly belong to this federation."

13. Article 13, section 17, of the Constitution of the American Federation of Labor provides that: "No Local Trade or Federal Labor Union, or Central Body or State Branch, shall disband so long as seven members or five Local Unions desire to retain the charter. Upon the dissolution, the suspension or revocation of the charter of any Local Trade or Federal Labor Union, or Central Body or State Branch, all funds and property of any character shall revert to the American Federation of Labor, to be held in

trust until such time that the suspended or defunct organization may be reorganized and ready to confine its activities and actions to conform with recognized enforceable laws of the American Federation of Labor. It shall further be the duty of the officers of the Local Trade or Federal Labor Union, or Central Body, or State Branch, which has been dissolved, or whose charter has been suspended or revoked, to deliver all funds and property to the President of the American Federation of Labor or a representative whom he may designate for that purpose."

14. Article 10, section 3, pages 20 and 21 of the Constitution of the American Federation of Labor provides that: "Section 3. Any organization affiliated with this Federation not paying its per capita tax on or before the 15th of each month shall be notified of the fact by the Secretary-Treasurer of the Federation, and if at the end of three months it is still in arrears it shall become suspended from membership of the Federation, and can be reinstated only by a vote of the Convention when such arrearages are paid in full, as provided in Section 2 of this Article."

15. Article 10, section 1, page 20 of the Constitution of the American Federation of Labor provides that: "Section 1. The revenue of the Federation shall be derived from a per capita tax to be paid upon the full paid-up membership of all affiliated bodies as follows:......; from Local Trade Unions and Federal Labor Unions, thirty-five cents per member per month, twelve and one-half cents of which must be set aside to be used only in the case of strike or lockout unless otherwise ordered by the Executive Council; the amount received by the American Federation of Labor on each initiation fee from all directly affiliated local unions shall be 25 per cent of the total initiation fee received by the local union from the individual, but in no case shall the amount received by the American Federation of Labor be less than one dollar; ......".

16. Article 13, section 14, pages 29 and 30 provides that: "Section 14. That initiation fees charged by directly affiliated Local Trade or Federal Labor Unions ......shall be forwarded to the Secretary-Treasurer of the American Federation of Labor, but in no case shall the amount received by the American Federation of Labor be less than one ($1.00) dollar, together with the per capita tax, accompanied by a monthly report giving the number of members paid for, and names of those initiated, reinstated, suspended and expelled, and number of members upon whom back per capita tax is being paid and months paid for, on blanks to be furnished by the Secretary-Treasurer of the Federation......"

17. Article 13, section 16, pages 30 and 31 provides that: "Section 16. That Local Trade and Federal Labor Unions shall be prohibited from assessing their members or appropriating their funds for any purpose other than union or American Federation of Labor purposes......"

18. The last remittance of per capita tax by the officers of the Aluminum Workers' Union to the American Federation of Labor was on January 25, 1937, which was for November, 1936, and the remittance was not accompanied by a report giving the names of those initiated, reinstated, suspended, or expelled, or the number of members upon whom back per capita tax was being paid or the months paid for.

19. That the last report accompanying the remittance of per capita tax, stating the names of those initiated, reinstated, suspended, or expelled, or number of members upon whom back per capita tax was being paid or months paid for, was on December 10, 1936, for the month of October, 1936.

20. On December 15, 1936, January 15 and February 15, 1937, notices were mailed by Frank Morrison, secretary-treasurer of the American Federation of Labor to the Aluminum Workers' Union, Local 18356, calling their attention to the provisions in section 3, article 10 of the Constitution of the American Federation of Labor, by reciting it verbatim and further calling their attention to the arrearage of per capita tax to the American Federation of Labor for the previous month.

21. On March 12, 1937, William Green, president of the American Federation of Labor, and Frank Morrison, secretary-treasurer of the American Federation of Labor, notified Mary M. Peli, financial secretary of the Aluminum Workers' Union, Local No. 18356, that by reason of arrearages in per capita tax payments

and failure to submit required reports the union was suspended in accordance with the provisions of the Constitution of the American Federation of Labor, and was directed to deliver all funds and property of every kind to David Williams, on behalf of the American Federation of Labor, to be held in trust until such time that the Aluminum Workers' Union, Local No. 18356, may be reorganized and ready to confine its activities and actions to conform with the recognized and enforceable laws of the American Federation of Labor.

22. True and correct copies of the letter, marked "Plaintiffs' Exhibit E," were mailed to each of the defendants as officers of the Aluminum Workers' Union.

23. Notwithstanding the notice and order of William Green, president of the American Federation of Labor, and Frank Morrison, secretary-treasurer of the American Federation of Labor, dated March 12, 1937, the officers of the Aluminum Workers' Union, Local No. 18356, have refused to comply with said notice and order.

24. The Aluminum Workers' Union, Local No. 18356, was given no notice that it would be granted a hearing on charges which would lead to the suspension or revocation of its charter.

25. No hearing was accorded the Aluminum Workers' Union, Local No. 18356, on any charges against it.

26. All funds of the Aluminum Workers' Union, Local No. 18356, have been contributed by its members.

27. On March 3, 1937, a check for $10,595.87, payable to the order of the Committee for Industrial Organization, was drawn on the First National Bank of New Kensington, Pa., by W. B. Gravatt, president, Mary M. Peli, financial secretary, George E. Hobaugh, treasurer, and was certified that same day against the general account of the union.

28. On March 3, 1937, a check for $9,000, payable to the order of the Committee for Industrial Organization, was drawn on the National Deposit Bank of Arnold, Pa., by W. B. Gravatt, president, Mary M. Peli, financial secretary, George E. Hobaugh, treasurer, and was certified that same day against the general account of the Aluminum Workers' Union.

29. On March 4, 1937, a check for $7,116.85, payable to the order of the Committee for Industrial Organization, was drawn by W. B. Gravatt, president, Mary M. Peli, financial secretary, George E. Hobaugh, treasurer, and was certified that same day against the general account of same.

30. On March 15, 1937, a check for $2,500, payable to the order of the Committee for Industrial Organization, was drawn against the National Deposit Bank of Arnold, Pa., by W. B. Gravatt, president, Mary M. Peli, financial secretary, and George E. Hobaugh, treasurer, and was certified against the general account of the Aluminum Workers' Union.

31. The checks referred to in findings 27 to 30, inclusive, have cleared through the banks on which they were drawn and by which they were certified respectively, and by reason thereof there is left no balance whatever, at the First National Bank of New Kensington, in favor of the Aluminum Workers' Union, and the balance of one cent ($.01) appears in the general account of the union at the National Deposit Bank of Arnold, Pa.

32. Article 2, page 3 of the Constitution of the Aluminum Workers' Union, No. 18356, provides: "The objects of this Union shall be the fostering and encouragement of a higher degree of skill and efficiency; the cultivation of friendship and fellowship among its members; a reduction in the hours of labor, thereby securing for the members more time for rest, recreation and study; the adoption of a wage scale providing an adequate remuneration for labor performed and the elevation and improvement of the moral, intellectual, social and economic condition of the workers."

33. Article 8, section 1, page 9 of the Aluminum Workers' Union provides: "The funds of this union shall be used in defraying necessary expenses and strike benefits hereinafter provided for."

34. No complaint had ever been received by the officers of the Aluminum Workers' Union, Local No. 18356, that the bonds of its bonded officers were inadequate.

35. The members and officers of the American Federation of Labor, including William Green, plaintiff, have an identical interest in this suit.

36. Article 13, section 4, of the American Federation of Labor Constitution provides that: "Section 4. No Local shall be entitled to benefit from the defense fund unless it has been in continuous good standing for one year; and no member shall be entitled to benefit from said defense fund unless he has been a member in good standing in the American Federation of Labor for at least one year."

37. The Committee for Industrial Organization is not a chartered body or chartered group of the American Federation of Labor.

38. The purpose of the Aluminum Workers' Union, Local No. 18356, is to engage in collective bargaining for its members for the purpose of securing shorter hours, higher wages, and improved conditions of employment. The union likewise provides strike benefits and other forms of protection for its members.

39. The only provision in the Constitution of the American Federation of Labor stating reasons for suspension is that of article 10, section 3, which is set forth in finding 14.

40. Aside from failure to pay per capita taxes, there is no reason stated in the Constitution of the American Federation of Labor for suspension of a federal labor union.

41. Under article 10, section 3, of the Constitution of the American Federation of Labor, the per capita taxes of any organization affiliated with the American Federation of Labor must be paid on or before the 15th day of the month following that for which the tax was paid.

42. The Aluminum Workers' Union, Local No. 18356, could not have been suspended before April 16, 1937, for nonpayment of the December, 1936, per capita tax.

43. The failure of an affiliated union to pay the per capita tax required by article 10, section 3, of the Constitution of the American Federation of Labor, within three months after the time it is required to be paid, does not automatically suspend such a union from membership in the American Federation of Labor.

## Conclusions of Law.

1. This court has jurisdiction of this case by reason of the diversity of citizenship of the parties plaintiff from the parties defendant, together with the amount involved.

2. Aluminum Workers' Union, No. 18356, could not automatically suspend itself from membership in the American Federation of Labor by failure to pay the required per capita tax within the time required by the Constitution of the American Federation of Labor.

3. Suspension of an affiliated local union in the American Federation of Labor for nonpayment of per capita tax requires action by the American Federation of Labor.

4. Aluminum Workers' Union, No. 18356, could not be suspended for nonpayment to the American Federation of Labor of December, 1936, per capita tax before April 16, 1937.

5. Plaintiffs should be required to recognize Aluminum Workers' Union, No. 18356, as an affiliated local union so long as its affiliation with the American Federation of Labor is not suspended or revoked.

6. Plaintiffs' application for a preliminary injunction should be refused. Defendants' application for a preliminary injunction should be refused except as provided otherwise in conclusion 5.

### Opinion.

The facts are stated in the foregoing findings of fact. The facts stated in this opinion are limited to those facts which seem to be pertinent to the questions discussed herein.

The parties to the original bill were the American Federation of Labor, an unincorporated association, William Green, president, and Frank Morrison, secretary-treasurer of said association, individually, and on behalf of all the officers and members of said association, plaintiffs. The defendants were the Aluminum Workers' Union, No. 18356, an unincorporated association, the officers and trustees thereof, individually, and certain banks which had been depositories of the funds of said Aluminum Workers' Union.

By amendment, William Green, individually, and on behalf of the officers and members of the American Federation of Labor, an unincorporated association, were named as plaintiffs. W. B. Gravatt, John Haser, Mary M. Peli, Walter Pasnick, George Hobaugh, Anthony Jasinski, Edward Troutman, Nick Zonorich, Louis Petrigni, Michael Barry and Thomas Davis, individually, and on behalf of the officers and members of the Aluminum

Workers' Union, No. 18356, an unincorporated association, were made defendants.

Jurisdiction is invoked on the ground of diversity of citizenship, together with the amount in controversy, which exceeds the jurisdictional amount. The bill is sustained as a class and representative bill, showing the requisite diversity of citizenship. The case is now before us on plaintiff's application for a preliminary injunction, wherein it was prayed that the defendant officers and trustees be restrained from acting officially on behalf of said Aluminum Workers' Union, No. 18356; from holding meetings of or on behalf of said union; from collecting funds, dues, and fees on behalf of said union; from transferring the property of said union to other than the duly authorized representative of the American Federation of Labor; and from holding meetings.

The right of plaintiffs to the relief sought by preliminary injunction depends upon whether the failure of the Aluminum Workers' Union (a directly affiliated union) to pay the per capita tax due the American Federation of Labor for the months of December, 1936, January and February, 1937, prior to March 19, 1937 (that being the date of the filing of the bill), automatically suspended the Aluminum Workers' Union, No. 18356, from membership in the American Federation of Labor.

Article 10, section 3 of the Constitution of the American Federation of Labor provides: "Any organization affiliated with this Federation not paying its per capita tax on or before the 15th of each month shall be notified of the fact by the Secretary-Treasurer of the Federation, and if at the end of three months it is still in arrears it shall become suspended from membership by the Federation, and can be reinstated only by a vote of the Convention when such arrearages are paid in full, as provided in Section 2 of this Article."

Article 10, section 1 provides that: "The revenue of the Federation shall be derived from a per capita tax to be paid upon the full paid-up membership of all affiliated bodies, as follows: ...... from Local Trade Unions, thirty-five cents per member per month, ......"

Article 13, section 17, provides: "Upon the dissolution, the suspension or revocation of the charter of any Local Trade or Federal Labor Union, or Central Body or State Branch, all funds and property of any character shall revert to the American Federation of Labor, to be held in trust until such time that the suspended or defunct organization may be reorganized and ready to confine its activities and actions to conform with recognized enforceable laws of the American Federation of Labor. It shall further be the duty of the officers of the Local Trade or Federal Labor Union, or Central Body, or State Branch, which has been dissolved, or whose charter has been suspended or revoked, to deliver all funds and property to the President of the American Federation of Labor or a representative whom he may designate for that purpose."

The language employed in article 10, section 3, is ambiguous as to the time when payment of per capita tax by an affiliated union is required, and as to the time when the secretary-treasurer shall serve notice on the affiliated union of nonpayment of said tax. Does this section require that the per capita tax be paid on or before the 15th of each calendar month, or does it give affiliated unions the right to pay such tax until the 15th of the succeeding month? Is the secretary-treasurer of the Federation required to give notice to an affiliated union of the nonpayment of said tax on or before the 15th day of the calendar month for which such tax is payable, or does it give until the 15th of the following month? Under this section, is an affiliated union in arrears which fails to pay its per capita tax for December, 1936, on or before December 15, 1936, immediately after said date, or is it not in arrears until January 15, 1937? The American Federation of Labor seemingly interpreted that the Aluminum Workers' Union, No. 18356, had until December 15, 1936, to pay the November, 1936, per capita tax; that it had until January 15, 1937, to pay the December, 1936, per capita tax; and until February 15, 1937, to pay the January, 1937, per capita tax, for the reason that it sent letters by its secretary-treasurer December 15, 1936, January 15 and February 15, 1937, notifying the Aluminum Workers' Union in each of said letters of its failure to pay the per capita tax for the preceding calendar month.

Article 10, section 3, provides that if any affiliated union at the end of three months is in arrears, it shall become suspended from membership by the Federation, and that it can be reinstated only by a vote of the Convention after such arrearages are paid in full. Article 13, section 17, provides that on such suspension, all funds and property of any character shall revert to the American Federation of Labor, to be held in trust until such time as the suspended organization may be reorganized and ready to confine its activities in conformity with the laws of said American Federation of Labor. Such results require a strict construction of article 10, section 3, and article 13, section 17. A construction in accordance with the practice seemingly adopted by the American Federation of Labor, which would give an affiliated union until the 15th of the following month to pay its per capita tax for the preceding month, seems to be a fair and reasonable interpretation of said section. Such a construction would give the Aluminum Workers' Union until January 15, 1937, to pay the December, 1936, per capita tax, and until February 15, 1937, to pay the January, 1937, per capita tax. The Aluminum Workers' Union, having paid the per capita tax due the American Federation of Labor up to and including the month of November, 1936, the first default was January 15, 1937, for the December, 1936, per capita tax. That default had not existed for the period of three months when the bill in this case was filed March 19, 1937. The Aluminum Workers' Union, No. 18356, could not become suspended until April 16, 1937.

An affiliated union, under the Constitution of the American Federation of Labor, does not automatically suspend itself from membership by failure to pay the per capita tax within the time required after notice. Article 10, section 3 of the Constitution provides that: "If at the end of three months it is still in arrears it shall become suspended from membership *by the Federation.*" The power to suspend is in the Federation. There is no evidence that the Federation exercised that power in this case, although there is evidence that the president and the secretary-treasurer notified the Aluminum Workers' Union, No. 18356, that it had become suspended by reason of its failure to pay the per capita tax as required by the Constitution.

There is respectable authority for supporting the contention that the Aluminum Workers' Union, No. 18356, could not be suspended without a notice of a hearing and a hearing. No such notice or hearing was given in this case. See Bricklayers, etc., Union v. Bowen et al. (Sup.) 183 N.Y.S. 855; Swaine v. Miller, 72 Mo.App. 446; Neal v. Hutcheson et al. (Sup.) 160 N.Y.S. 1007.

In Riverside Lodge No. 164 et al. v. the Amalgamated Association of Iron, Steel and Tin Workers of North America et al., 13 F.Supp. 873, 875 (D.C.W.D. Pa.), it is stated: "Unless the laws of the association provide otherwise, the member, or sublodge, charged with an offense must be given a hearing, be notified thereof, and afforded an opportunity to be heard."

A preliminary injunction will not be granted in a doubtful case. U. S. et al. v. Republic Oil Refining Co. (D.C.) 8 F.Supp. 897–905. The court, in determining whether a preliminary injunction should issue, has a right to consider the relative conveniences and inconveniences that might result. Rice & Adams Corporation v. Lathrop, 278 U.S. 509, 49 S. Ct. 220, 73 L.Ed. 480; International Film Service Co., Inc. v. Associated Producers, Inc. (D.C.) 273 F. 585.

I conclude that plaintiffs' application for a preliminary injunction should be refused.

This case is also before us on the application of defendants for a preliminary injunction which is set forth in their answer and cross-bill. I have given consideration thereto and have reached the conclusion that said application for a preliminary injunction should be refused, except that the plaintiffs should be required to recognize the Aluminum Workers' Union, No. 18356, as an affiliated local union so long as its affiliation with the American Federation of Labor is not suspended or revoked.

Let a decree be prepared in accordance with the foregoing findings of fact, conclusions of law, and this opinion.